NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|   |   |
|---|---|
| MICHAEL WALKER, | Civil No. 11-7231 (JAP) |
| Plaintiff, | |
| v. | OPINION |
| CITY OF TRENTON, et al., | |
| Defendants. | |

**APPEARANCES:**

    MICHAEL WALKER, #JX0796, Plaintiff Pro Se
    South Woods State Prison
    S.C.I. Rockview
    Box A
    Bellefonte, PA  16823

**PISANO, District Judge**:

    Plaintiff, Michael Walker, a prisoner incarcerated at S.C.I. Rockview in Pennsylvania, seeks to file a Complaint without prepayment of the filing fee asserting violation of his rights under 42 U.S.C. § 1983 against the City of Trenton and various officials.  This Court will grant Plaintiff's application to proceed in forma pauperis.  Having reviewed Plaintiff's submissions, as required by 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, this Court will dismiss the federal claims raised in the Complaint and decline to exercise supplemental jurisdiction.

## I.  BACKGROUND

    Michael Walker brings this Complaint for violation of his constitutional rights under 42 U.S.C. § 1983 against the City of Trenton, County of Mercer, Mercer County Prosecutor Joseph

Bocchini, Jr., Prosecutor D. McCleese, Mercer County Sheriff Jeremy Stewart, and Trenton Police Sgt. Austin. He asserts the following facts in the typed Complaint which is attached to a civil rights complaint form:

> [] On November 30, 2010 at 9:00 Am Plaintiff went by his friends house; Mario Wells house to visit Mr. Wells house is located at 826 East State Street in Trenton of Mercer County, New Jersey. On this date Plaintiff Friend Home was broken into during this time the officers found a Hand Gun, marijuana, scale, prescription pills and other contraband seized in the Plaintiff's Friend building. During the time that the contraband was found the Plaintiff friend Wells Claimed ownership. Plaintiff had no knowledge that such contraband, yet the defendants tried there best to make the Plaintiff lay claim by force. Plaintiff refused and maintained that it was not his, Defendants tried to force Plaintiff to take a guilty pleas for something he did not do, the case was dismissed against the plaintiff.
>
> [] At no time did Plaintiff commit any offense or was in the p[osses]sion of any contraband for any criminal prosecution to be initi[at]ed. As a direct and proximate result of the actions of all Defendants, Plaintiff suffers and continues to suffer pain and emotional distress, some or all of which may be permanent, as well as financial losses.
>
> [] The Defendants were without authority to prosecute Plaintiff when the plaintiff's friend made claim to the contraband. The actions taken by the defendants to try and force him to plea[d] guilty was willful, wanton, malicious, intentional, outrages, deliberate and/or so egregious as to shock the conscience. The defendants engaged in this conduct for the purpose of removing plaintiff from the streets and facing him to plea[d] guilty to something he did not do. Thereby violating plaintiff's constitutional rights by subjecting him to an unlawful arrest, detention and malicious prosecution.

(Dkt. 1 at 11-12) (paragraph numbers omitted).

Plaintiff further states in the civil rights complaint form that his "action against the individuals in the DA's Office [is] premised on the failure as administrators to establish that the contraband that the plaintiff was wrongfully charged with was his; even after its owner came forward acknowledging his ownership. The Plaintiff was subjected to threats and intimidation to enter a plea which he refused. PLAINTIFF'S CLAIMS AGAINST THE DEFENDANTS WAS

PREMISED ON THEIR FAILURE TO TRAIN SUPERVISE AND DISCIPLINE POLICIES WHICH WOULD HAVE PREVENTED O[R] DISCOURAGED THE POLICE FROM PROCURING PERJURIOUS INFORMATION CONCERNING THE CONTRABAND." (Dkt. 1 at 4.)

Plaintiff asserts that the defendants improperly arrested him, when Wells had claimed ownership of the contraband, falsely imprisoned him, maliciously prosecuted him, and were deliberately indifferent to a pattern, practice and custom of unlawful arrests and malicious prosecution, as well as the need for training, supervision and discipline in the proper exercise of the power to arrest and prosecute persons. (Id. at 13-14.) He seeks damages for violation of his constitutional rights. (Id. at 8, 15.)

## II.  STANDARD FOR DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a District Court to screen a complaint in a civil action in which a plaintiff is proceeding in forma pauperis or a prisoner is seeking redress against a government employee or entity, and to sua sponte dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. §§ 1915(e)(2)(B), 1915A.

To survive dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " Ashcroft v. Iqbal, 556 U.S.

3

662, 678 (2009)  (citation omitted).  "[A] complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir.2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 & n. 3 (2007)).  This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S.Ct. 1955 (citation omitted).  "On the contrary, a court is not required to accept legal conclusions alleged in the complaint.  The pleading must contain sufficient factual allegations so as to state a facially plausible claim for relief." Mayer v. Belichick, 605 F.3d 223, 229-230 (3d Cir. 2010) (citations omitted).  A claim possesses such plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  In deciding dismissal under the Rule 12(b)(6) standard, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer at 230; see also Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir.1993).  The Court is mindful, however, that the sufficiency of this pro se pleading must be construed liberally in favor of the plaintiff, even after Iqbal.  See Erickson v. Pardus, 551 U.S. 89 (2007).

### III.  DISCUSSION

A.  Federal Claims

    Section 1983 of Title 28 of the United States Code provides in relevant part:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory . . . subjects,
> or causes to be subjected, any citizen of the United States or other

4

> person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and
> laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

To recover under 42 U.S.C. § 1983, a plaintiff must show two elements: (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988).

Plaintiff sues two prosecutors - Bocchini and McCleese. In Imbler v. Pachtman, 424 U.S. 409 (1976), the Supreme Court held that a prosecutor is absolutely immune from damages under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process," id. at 430-31, including use of false testimony and suppression of evidence favorable to the defense by a police fingerprint expert and investigating officer. Since Imbler, the Supreme Court has held that "absolute immunity applies when a prosecutor prepares to initiate a judicial proceeding, or appears in court to present evidence in support of a search warrant application." Van de Kamp v. Goldstein, 555 U.S. 335, 343 (2009) (citations omitted). In Van de Kamp, the Supreme Court further held that, although the challenged conduct of the prosecutor may be categorized as administrative, a supervisory prosecutor is absolutely immune for failing to adequately train and supervise district attorneys on the duty not to withhold impeachment evidence and the failure to create any system for accessing information pertaining to the benefits provided to jailhouse informants. The Supreme Court explained its rationale:

> [Petitioner's] claims focus upon a certain kind of administrative
> obligation - a kind that itself is directly connected with the conduct

5

> of a trial. Here, unlike with other claims related to administrative decisions, an individual prosecutor's error in the plaintiff's specific criminal trial constitutes an essential element of the plaintiff's claim. The administrative obligations at issue here are thus unlike administrative duties concerning, for example, workplace hiring, payroll administration, the maintenance of physical facilities, and the like. Moreover, the types of activities on which Goldstein's claims focus necessarily require legal knowledge and the exercise of related discretion, e.g., in determining what information should be included in the training or the supervision or the information-system management. And in that sense also Goldstein's claims are unlike claims of, say, unlawful discrimination in hiring employees. Given these features of the case before us, we believe absolute immunity must follow.
>
> We reach this conclusion by initially considering a hypothetical case that involves supervisory or other office prosecutors but does not involve administration. Suppose that Goldstein had brought such a case, seeking damages not only from the trial prosecutor but also from a supervisory prosecutor or from the trial prosecutor's colleagues - all on the ground that they should have found and turned over the impeachment material about Fink. Imbler makes clear that all these prosecutors would enjoy absolute immunity from such a suit. The prosecutors' behavior, taken individually or separately, would involve preparation . . . for . . . trial, and would be intimately associated with the judicial phase of the criminal process because it concerned the evidence presented at trial. And all of the considerations that this Court found to militate in favor of absolute immunity in Imbler would militate in favor of immunity in such a case.
>
> The only difference we can find between Imbler and our hypothetical case lies in the fact that, in our hypothetical case, a prosecutorial supervisor or colleague might himself be liable for damages *instead* of the trial prosecutor. But we cannot find that difference (in the pattern of liability among prosecutors within a single office) to be critical. Decisions about indictment or trial prosecution will often involve more than one prosecutor . . . . We do not see how such differences . . . could alleviate Imbler's basic fear, namely, that the threat of damages liability would affect the way in which prosecutors carried out their basic court-related tasks.

Van de Kamp, 555 U.S. at 344-45.

In this Complaint, Walker asserts that prosecutor McCleese maliciously prosecuted him and that supervisor Bocchini failed to adequately train McCleese not to maliciously prosecute persons. However, prosecutor McCleese is absolutely immune from claims for malicious prosecution. See Rehberg v. Paulk, 132 S.Ct. 1497, 1504 (2012); Imbler, 424 U.S. at 430-31. And under Van de Kamp, Bocchini is protected by absolute immunity for failure to properly supervise and train McCleese. As the misconduct alleged in the Complaint against the prosecutors consists of acts taken in their role as advocates for the state, the § 1983 claims damage against them will be dismissed on the ground of absolute immunity.

Walker also sues police/sheriff officers Stewart and Austin for false arrest and malicious prosecution. Plaintiff asserts that Stewart is "responsible for the Plaintiff's arrest" and Austin "is also responsible for the False Arrest and False Imprisonment." (Dkt. 1 at 11.) Plaintiff maintains that these defendants falsely arrested and imprisoned him, even though at "the time that the contraband was found the Plaintiff['s] friend Wells Claimed ownership," "Plaintiff had no knowledge [of] such contraband," and "Plaintiff . . . maintained that it was not his." Id. at 12. Although Walker was present in Wells' house when the contraband was found on November 30, 2010, he maintains that "Defendants were without authority to prosecute Plaintiff when the plaintiff's friend made claim to the contraband." Id.

"To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause." James v. City of Wilkes-Barre, 700 F.3d 675, 680 (3d Cir. 2012); see also Albright v. Oliver, 510 U.S. 266, 274-75 (1994). "[W]hen an officer has probable cause to believe a person committed even a minor crime . . . the balancing of private and public interests is not in doubt [and t]he arrest is

constitutionally reasonable." Virginia v. Moore, 553 U.S. 164, 171 (2008).  To state a claim for malicious prosecution brought under 42 U.S.C. § 1983, a plaintiff must satisfy each of the following elements:  "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009) (en banc) (internal quotation marks omitted).

   The problem with Walker's false arrest, false imprisonment, and malicious prosecution claims against the police officers is that the facts alleged in the Complaint show that the police had probable cause to arrest Walker, and the existence of probable cause defeats these claims. "'[T]he establishment of probable cause as to any one charge [of several charges] is sufficient to defeat . . . Fourth Amendment claims,' including claims for malicious prosecution." Minatee v. Philadelphia Police Dept., 2012 WL 5359527 (3d Cir. Nov. 1, 2012) (quoting Starzell v. City of Philadelphia, 533 F.3d 183, 204 n.14 (3d Cir. 2008)).

   "Probable cause to arrest exists when the facts and the circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Merkle v. Upper Dublin School Dist., 211 F.3d 782, 788 (3d Cir. 2000) (citations and internal quotation marks omitted); accord Revell v. Port Authority of New York, New Jersey, 598 F. 3d 128, 137 n.16 (3d Cir. 2010).  "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Devenpeck v. Alford, 543

8

U.S. 146, 152 (2004). While "[t]he probable-cause standard is incapable of precise definition or quantification," Maryland v. Pringle, 540 U.S. 366, 371 (2003), "all interpretations of probable cause require a belief of guilt that is reasonable, as opposed to certain." Wright v. City of Philadelphia, 409 F.3d 595, 601-602 (3d Cir. 2005). "Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." Adams v. Williams, 407 U.S. 143, 149 (1972). "Therefore, the evidentiary standard for probable cause is significantly lower than the standard which is required for conviction." Wright, 409 F.3d at 602. "[T]he kinds and degree of proof and the procedural requirements necessary for a conviction are not prerequisites to a valid arrest." Michigan v. DeFillippo, 443 U.S. 31, 36 (1979) (citations omitted); see also Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000) (holding that probable cause only requires a "fair probability" that a person committed the relevant crime). "In other words, the constitutional validity of the arrest does not depend on whether the suspect actually committed any crime." Wright, 409 F.3d at 602. See also Fiore v. City of Bethlehem, 2013 WL 203410 (3d Cir. Jan. 18, 2013) (rejecting claim that "later dismissal of the charges against [plaintiff] due to insufficient evidence equates to a determination that no probable cause existed for his arrest," since "probable cause does not require the same type of specific evidence as would be needed to support a conviction") (citations and internal quotation marks omitted).

      In this case, the facts in the Complaint show that the police had probable cause to arrest Walker and Wells, since they were both present in the premises where the police found contraband. See Pringle, 540 U.S. at 373 (finding probable cause to arrest all three passengers in a car for possession of cocaine found in the rear seat of a vehicle in which Pringle was the front-

seat passenger because the "quantity of drugs and cash in the car indicated the likelihood of drug dealing, an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him"). On the facts alleged by Walker, a reasonable inference could be drawn that each of occupants of the premises - Wells and Walker - had knowledge of and exercised dominion and control over the contraband, thereby providing probable cause to arrest them. See Cox v. Pate, 283 Fed. App'x 37, 40 (3d Cir. 2008) ("Based on the contraband recovered . . , we agree with the District Court that there was probable cause to arrest McAfee, who was one of the occupants of the hotel room").

The fact that Wells admitted to the police at the time of the arrests that the contraband belonged to him does not show that the police lacked probable cause to arrest Walker. Although Wells' admission is a factor in the probable cause analysis, it is not dispositive. "The probable cause inquiry looks to the totality of the circumstances; the standard does not require that officers correctly resolve conflicting evidence or that their determinations of credibility, were, in retrospect, accurate. The officers did not believe [Wells and Walker]. Although they may have made a mistake, their belief was not unreasonable in light of the information the officers possessed at the time." Wright, 409 F.3d at 603.[1]

---

[1] See also Atwater v. City of Lago Vista, 532 U.S. 318, 347 (2001) ("[W]e have traditionally recognized that a responsible Fourth Amendment balance is not well served by standards requiring sensitive, case-by-case determinations of government need, lest every discretionary judgment in the field be converted into an occasion for constitutional reivew. Often enough, the Fourth Amendment has to be applied on the spur (and in the heat) of the moment, and the object in implementing its command of reasonableness is to draw standards sufficiently clear and simple to be applied with a fair prospect of surviving judicial second-guessing months and even years after an arrest or search is made. Courts attempting to strike a reasonable Fourth Amendment balance thus credit the government's side with an essential interest in readily administrable rules") (citation omitted); New York v. Belton, 453 U.S. 454, 458 (1981) (Fourth
(continued...)

This Court will dismiss the false arrest, false imprisonment and malicious prosecution claims against the officers because the facts alleged in the Complaint show that the police had probable cause to arrest (and prosecute) Walker.[2]

B.  Supplemental Jurisdiction

"Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  Wisconsin Dept. of Corrections v. Schacht, 524 U.S. 381, 387 (1998) (citation and internal quotation marks omitted). Where a district court has original jurisdiction pursuant to 28 U.S.C. § 1331 over federal claims and supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367(a), the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction.  28 U.S.C. § 1367(c)(3); Growth Horizons, Inc. v. Delaware County, Pennsylvania, 983 F.2d 1277, 1284-1285 (3d Cir. 1993).  In exercising its discretion, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'"  Growth Horizons, Inc., 983 F.2d at 1284 (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)).  Where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims.  United Mine Workers v. Gibbs, 383 U.S. at 726;  Growth

---

[1](...continued)
Amendment rules "ought to be expressed in terms that are readily applicable by the police in the context of the law enforcement activities in which they are necessarily engaged" and not "qualified by all sorts of ifs, ands, and buts").

[2] This Court will not grant leave to file an amended complaint because, given the detail in the Complaint, amendment would be futile.

11

Horizons, Inc., 983 F.2d at 1284-1285.  In this case, the Court is dismissing every claim over which it had original subject matter jurisdiction at an early stage in the litigation and declines to exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c)(3).

## V.  CONCLUSION

Based on the foregoing, this Court will grant the application to proceed in forma pauperis, dismiss the federal claims raised in the Complaint, and decline to exercise supplemental jurisdiction.

/s/ Joel A. Pisano
**JOEL A. PISANO, U.S.D.J.**

Dated:  January 28, 2013